**INDUSTRIAL STEEL CONTAINER COMPANY, by George J. RUTMAN, as Trustee, Respondent,**

**v.**

**FIREMAN'S FUND INSURANCE CO., Appellant,**

**Pine Top Insurance Company, Appellant,**

**Great Southwest Fire Insurance Company, Appellant.**

Nos. C8–86–1135, C8–86–1197.

Court of Appeals of Minnesota.

Jan. 13, 1987.

Review Denied March 18, 1987.

John P. Lommen, Kay Nord Hunt, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, for respondent.

M. Paul Gorfinkel, William M. Savino, Daniel A. Bartoldus, Rivkin, Radler, Dunne & Bayh, Uniondale, N.Y., Henry A. Cousineau, Jr., Jeffrey O. Knutsen, Cousineau, McGuire, Shaughnessy & Anderson, Chartered, Leo Gerard Daly, Arthur, Chapman, Michaelson & MacDonough, Minneapolis, for appellants.

Thomas W. Brunner, Laura A. Foggan, Piper & Marbury, Washington, D.C., John B. Gordon, Linda S. Svitak, Faegre & Benson, Minneapolis, for amicus curiae American Ins. Assoc.

Heard, considered, and decided by CRIPPEN, P.J., and LANSING and LESLIE, JJ.

## OPINION

LANSING, Judge.

In 1983 the Minnesota Pollution Control Agency (MPCA) identified Industrial Steel Container Company (ISCC) as a party potentially responsible for surface and ground water contamination from hazardous wastes deposited in a landfill in Andover, Minnesota. ISCC notified its insurers of the claim and requested defense and indemnification. The insurers refused and ISCC filed this action seeking a declaratory judgment of the insurers' duties. The trial court denied a motion for summary judgment brought by two of the insurers and granted summary judgment for ISCC, the nonmoving party. The insurers appeal; we affirm in part, reverse in part and remand.

## FACTS

ISCC manufactured and reconditioned steel drums until it ceased operations in 1979. The reconditioning process involved eliminating residue in the drums by incineration. This process generated solid waste material and ash, which were transported by Waste Control, Inc., to the Waste Dis-

posal Engineering landfill in Andover, Minnesota. ISCC disclaims knowledge that the waste was going to Andover, acknowledging only that the waste went to an approved site located somewhere in Anoka County.

The Andover landfill operated from 1963 until 1983. From November 1972 until January 1974, part of the site was designated for hazardous wastes. An Environmental Protection Agency field investigation report states that hazardous wastes were deposited illegally at the landfill before 1972 and after 1974.

Coon Creek runs 200 feet to the north of the Andover landfill. In 1979, tests confirmed that surface water in Coon Creek, as well as groundwater underneath, were contaminated with chlorinated organic hydrocarbons from the wastes deposited at the site.

The Minnesota Pollution Control Agency notified ISCC in July 1983 of the release of toxic and hazardous waste from the landfill. The notification letter requested information on whether ISCC had ever shipped hazardous wastes with Waste Control, Inc., or deposited wastes at the Andover landfill. ISCC admitted that Waste Control, Inc., transported wastes for ISCC.

In October 1983 MPCA informed ISCC that Waste Control, Inc., had failed to undertake necessary remedial investigation and actions. In November MPCA identified ISCC as a potentially responsible party for generating the hazardous substances. Under the Comprehensive Environmental Response Compensation and Liability Act of 1980, 42 U.S.C. §§ 9601–9657 (CERCLA), and the Minnesota Environmental Response and Liability Act, Minn.Stat. §§ 115B.01–115B.37, parties are liable for all monies expended by the United States government and the State of Minnesota for response actions at hazardous waste sites.

On October 23, 1984, MPCA issued a Request for Response Action which required ISCC to provide additional information, implement a remedial investigation, conduct a feasibility study, and implement the remedial action selected. ISCC is subject to substantial civil penalties if it fails to take the requested action.

Fireman's Fund Insurance Company insured ISCC from February 1, 1982, through February 1, 1984, under a comprehensive general liability insurance policy. Pine Top Insurance Company insured ISCC from February 1, 1983, through February 1, 1984, under a completed operation and products liability insurance policy. Great Southwest Fire Insurance Company insured ISCC from February 1, 1983, through February 1, 1984, under a commercial umbrella liability insurance policy. The insurers were notified of MPCA's claims. Fireman's Fund and Pine Top denied coverage and Great Southwest failed to respond.

In October 1984 ISCC brought this action seeking a declaratory judgment that Fireman's Fund, Pine Top and Great Southwest have a duty to defend and indemnify it against MPCA's claims. The insurers' answers raised a number of affirmative defenses: no occurrence or property damage within the meaning of the policy; no occurrence within the policy period; no coverage because there is no "suit against the insured seeking damages;" an exclusion for property damage resulting from pollution; and other coverage limitations and exclusions.

Fireman's Fund and Pine Top moved for summary judgment on the ground that there was no occurrence because there was no property damage during their policy periods. The trial court found that there was an "occurrence" and "property damage" and denied Fireman's Fund's and Pine Top's motion. The court then granted summary judgment to ISCC, the nonmoving party, based on the doctrine of extended reasonable expectations. *Atwater Creamery Co. v. Western National Mutual Insurance Co.,* 366 N.W.2d 271, 278–79 (Minn.1985).

## ISSUES

1. Did the trial court err in finding that property damage occurred within the policy period?

2. Did the trial court properly grant summary judgment for ISCC, the nonmoving party?

## ANALYSIS

### I

Under the policies issued to ISCC, Fireman's Fund and Pine Top are obligated to pay all sums for which the insured is legally obligated because of property damage caused by an occurrence and to defend any suit against the insurer seeking damages on account of property damage. The policy definitions for property damage and occurrence in both policies are standard comprehensive general liability policy definitions which provide that an "occurrence" is "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured" during the policy period. "Property damage," which is physical injury to or destruction of tangible property, must also occur within the policy period.

The insurers moved for summary judgment under these provisions, claiming that because there was no property damage within the policy period, there was no insured "occurrence."

It is difficult in long-term exposure cases to determine whether there was property damage occurring during a specific policy period. Courts have used at least five different approaches in deciding when damage or injury occurs: (1) the exposure rule, see Insurance Co. of North America v. Forty-Eight Insulations, Inc., 633 F.2d 1212, 1219 (1980), reh'g granted, 657 F.2d 814 (1981), cert. denied, 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981), reh'g denied, 455 U.S. 1009, 102 S.Ct. 1648, 71 L.Ed.2d 878 (1982) (injury occurs when exposure to that which eventually causes the injury takes place); (2) the manifestation rule, see Eagle-Picher Industries, Inc. v. Liberty Mutual Insurance Co., 682 F.2d 12, 19 (1st Cir.1982), cert. denied, 460 U.S. 1028, 103 S.Ct. 1279, 75 L.Ed.2d 500 (1983) (injury occurs when it first becomes apparent to the injured party); (3) the double trigger rule, see Transamerica Insurance Co. v. Bellefonte Insurance Co., 490 F.Supp. 935, 939 (E.D.Pa.1980) (injury occurs at the time of exposure and at the time when the injury becomes apparent); (4) the triple trigger rule, see Keene Corp. v. Insurance Co. of North America, 667 F.2d 1034 (D.C.Cir.1981), cert. denied, 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1982), reh'g denied, 456 U.S. 951, 102 S.Ct. 2023, 72 L.Ed.2d 476 (1982) (injury occurs at the time of first exposure, at the time the injury becomes apparent, and at all times in between); and (5) the actual injury rule, see American Home Products v. Liberty Mutual Insurance Co., 565 F.Supp. 1485 (S.D.N.Y.1983) (injury occurs when the property is actually damaged).

In Singsaas v. Diederich, 307 Minn. 153, 156, 238 N.W.2d 878, 880 (1976), the Minnesota Supreme Court interpreted a similar definition of occurrence of property damage to mean "not the time the wrongful act was committed but the time the complaining party was actually damaged." We believe this interpretation governs the coverage in this case.

■ We view this "actual injury" rule to be sufficiently broad to recognize that in cases involving long exposure to a toxic substance there can be damage with more than one manifestation and more than one insurance policy can afford coverage. We reject the argument that there can be only one occurrence in a case where property damage results from continuous or repeated conditions of exposure.

It is undisputed that the contamination of the ground water and soil was an ongoing process occurring during the insurers' policy periods. Although the contamination was initially manifested before the effective dates of these policies, the leakage continued into the policy periods, resulting

in continued manifestation of actual injury until at least 1983.

 We affirm the trial court's holding that property damage occurred within the policy period and the denial of Fireman's Fund and Pine Top's motion for summary judgment. Although this was the sole ground for the insurers' motion for summary judgment, the trial court's holding extended to other areas. The court made a general determination that there was an occurrence under the policy and then granted summary judgment to ISCC, the nonmoving party, apparently based on the expectation language of *Atwater*. The court did this without evidence of expectation and without argument or briefing on this point. The court also failed to rule on whether the MPCA actions constitute a suit and whether the pollution exclusion applies. These issues were before the trial court in pleadings and affidavits and require resolution. Minn.R.Civ.P. 56.03.

Whenever the court believes that the nonmoving party is entitled to judgment, great care must be exercised to assure that the moving party has had an adequate opportunity to show that its opponent is not entitled to judgment. *See Fountain v. Filson*, 336 U.S. 681, 69 S.Ct. 754, 93 L.Ed. 971 (1949), *reh'g denied*, 337 U.S. 921, 69 S.Ct. 1153, 93 L.Ed. 1730 (1949). Judgment may be granted for a nonmoving party, but only where there has been full opportunity to present factual and legal issues. The insurers must be given an opportunity to present evidence and arguments on the remaining issues.

### DECISION

The trial court correctly denied summary judgment for the insurers, because the contaminant leakage constitutes an accident resulting in property damage during the policy period. We reverse the summary judgment in favor of ISCC and remand to the trial court for a determination on the remaining issues.

Affirmed in part, reversed in part, and remanded.