**DIOCESE OF WINONA, a Minnesota non-profit religious corporation,**
Plaintiff,

v.

**INTERSTATE FIRE AND CASUALTY COMPANY, Those Certain Underwriters at Lloyd's, London, Signatory to Policies No. SLC 3402 and SL 3721, and Centennial Insurance Company, Defendants.**

**ARCHDIOCESE OF ST. PAUL & MINNEAPOLIS, et al.,**
Plaintiffs,

v.

**UNDERWRITERS AT LLOYD'S, LONDON, Defendants.**

Civ. Nos. 3–90–0441, 3–90–0527.

United States District Court,
D. Minnesota,
Third Division.

July 23, 1992.

Andrew J. Eisenzimmer, Meier, Kennedy & Quinn, St. Paul, MN, and George F. Restovich, Rochester, MN, for Archdiocese of Saint Paul and Minneapolis, Church of Immaculate Conception in Columbia Heights, MN, and Church of the Risen Savior in Apple Valley, MN.

John J. McDonald, Jr., and John R. Bland, Meagher & Geer, Minneapolis, MN, and Richard F. Johnson, Lord Bissell & Brook, Chicago, IL, for Underwriters at Lloyd's, London.

Winfred S. Herzog, Moss & Barnett, Minneapolis, MN, and Timothy J. McNamara, Onebane, Donohoe & Bernard, Lafayette, LA, for Interstate Fire and Cas. Co.

Paula T. Weseman, and James A. O'Neal, Faegre & Benson, Minneapolis, MN, for Aetna Cas. & Sur. Co.

## MEMORANDUM AND ORDER

MAGNUSON, District Judge.

### I. INTRODUCTION

This matter is before the court upon motions for summary judgment by the Diocese of Winona (Docket No. 16 in Civil File No. 3–90–441), the Archdiocese of St. Paul and Minneapolis (Docket No. 23 in Civil File No. 3–90–441; Docket No. 20 in Civil File No. 3–90–527), Underwriters at Lloyd's, London (Docket No. 22 in Civil File No. 3–90–441; Docket No. 19 in Civil File No. 3–90–527), Aetna Casualty & Surety Company (Docket No. 21 in Civil File No. 3–90–527), and Interstate Fire Insurance Company.

### II. FACTS

Father Thomas Adamson was employed as a priest by the Diocese of Winona from 1958 to 1985. In the early 1970's, an incident came to the attention of Bishop Watters which raised concerns about Adamson's involvement with boys. Watters referred Adamson to Dr. Francis Tyce, a psychiatrist in the Rochester area for psychiatric evaluation. In 1974, Father Adamson underwent treatment at the Institute of Living.

In August 1974, Father Adamson resumed his pastoral duties at St. Francis Church in Rochester and continued his out-patient psychotherapy with Father Pierre. In 1975, Bishop Watters transferred Father Adamson to the Archdiocese of Minneapolis/St. Paul.

Father Adamson began abusing Tom Mrozka in October of 1979 while Father Adamson was a priest at the Immaculate Conception Church in Columbia Heights. The abuse continued on a daily basis until the spring of 1984. After the spring of 1984, the abuse continued on a sporadic basis until 1987.

In April 1989, Mrozka sued the Diocese of Winona and the Archdiocese of Minneapolis/St. Paul under the theories of negligence, respondeat superior and negligent infliction of emotional distress. The underlying litigation was tried to a jury from October 1990 to December 1990.

The jury specifically found that Father Adamson engaged Mrozka in sexual conduct and awarded Mrozka $812,250.00 in compensatory damages. The jury further found that both the Archdiocese and the Diocese of Winona showed a willful indifference or deliberate lack of concern for the rights or safety of others and that both the Archdiocese and the Diocese of Winona were reckless in employing an unfit agent and awarded Mrozka $2,000,000.00 in punitive damages. Judge Phyllis G. Jones reduced the amount of punitive damages award from $2,000,000.00 to $200,000.00.

During the years in which Father Adamson abused Mrozka, the Diocese was insured

under a three-layer insurance program. The first layer was a $75,000.00 layer of self-insurance. Lloyd's provided a second layer of coverage to a limit of $200,000.00, or $125,000 of coverage. Interstate provided a third layer of coverage of approximately $5,000,000.00.

In 1979, the Archdiocese was insured by Aetna. On September 1, 1980, the Archdiocese purchased an insurance program similar to the three-layer program that the Diocese had. The Archdiocese had $100,000 of self-insurance, $100,000.00 excess coverage from Lloyd's to a limit of $200,000.00, and excess insurance from Interstate. The Lloyd's policies were written for three-year periods from September 1, 1980 to September 1, 1983, from September 1, 1983 to September 1, 1986, and from September 1, 1986 to September 1, 1987. The Interstate policies were written for annual periods beginning September 1, 1980 through September 1, 1987.

The Interstate policy stated that it incorporated the provisions of the "immediately underlying policy." The immediately underlying policy was the Lloyd's policy, which stated as follows:

> Underwriters hereby agree ... to indemnify the Assured for all sums which the Assured shall by obligated to pay by reason of the liability imposed upon the Assureds by law ... for damages ... on account of personal injuries ... arising out of any occurrence happening during the period of insurance.

The Lloyd's policy defined the term "occurrence" as follows:

> An accident or a happening or event or a continuance or repeated exposure to conditions which unexpectedly and unintentionally results in personal injury, or damage to property during the policy. All such exposure to substantially the same general conditions existing at or emanating from one location shall by deemed one occurrence.

## III. DISCUSSION

A court shall render summary judgment when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c) (1987).

### A. EXISTENCE OF COVERAGE
#### 1. COMPENSATORY DAMAGES

■ Lloyd's and Interstate argue that the Diocese and the Archdiocese are not entitled to coverage for the damage caused by Father Adamson because those damages were "expected." The Archdiocese of Minneapolis/St. Paul has presented evidence, however, that it was not aware of Father Adamson's sexual problems. The Archdiocese presented evidence that Bishop Watters did not tell Archbishop Roach that Adamson had prior sexual problems involving children. The Diocese of Winona has presented evidence that Bishop Watters returned Father Adamson to his pastoral duties upon the recommendation of Adamson's treating doctors and assurances from Father Adamson that he thought he would be able to avoid any future sexual misconduct. The Diocese and Archdiocese have, thereby, created an issue of fact for trial as to whether they "expected" Father Adamson to sexually abuse Mrozka.

■ Lloyd's and Interstate cite numerous cases which infer intent to injure as a matter of law. These cases are distinguishable from the case at hand, however, because they either involve intentional torts or property damage in which the intent to injure was more certain. Furthermore, in *NorthStar Mutual Insurance Co. v. R.W.*, 431 N.W.2d 138 (Minn.Ct.App.1988), the plaintiff brought a cause of action against the insured for negligent transmission of herpes. The court held that intent to injure could not be inferred as a matter of law because the claimant's complaint was grounded in negligence principles, even though the complaint included a claim for punitive damages. *Id.* at 141. This court refuses, therefore, to infer an intent to injure as a matter of law.

Lloyd's and Interstate argue that the jury's finding of willful and deliberate and reckless conduct is binding on the plaintiffs and collaterally estops the plaintiffs from seeking coverage. The jury in the underlying trial found that the Diocese and the Archdiocese acted with willful indifference or deliberate lack of concern and that they were

reckless in the employment of Father Adamson. Judge Jones awarded $200,000.00 in punitive damages.

■ Collateral estoppel is appropriate when:

(1) the issue was identical to the one in a prior adjudication;

(2) there was a final judgment on the merits;

(3) the estopped party was a party or in privity with a party to the prior adjudication; and

(4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue. *Kaiser v. Northern States Power Co.*, 353 N.W.2d 899, 902 (Minn.1984). The issue must be "necessary and essential" to result in judgment. *Ellis v. Minneapolis Commission on Civil Rights*, 319 N.W.2d 702, 704 (Minn.1982).

The issue before the court in this action is whether the Diocese or Archdiocese expected Father Adamson to sexually abuse Tom Mrozka. The issue before the jury was did the Diocese and the Archdiocese act with willful indifference or deliberate lack of concern or reckless in the employment of Father Adamson. A determination of whether the Diocese or Archdiocese expected Father Adamson to sexually abuse Mrozka is not necessary to that issue and raises a genuine issue of fact for trial.

### 2. PUNITIVE DAMAGES

■ Lloyd's and Interstate argue that no coverage is available for punitive damages. As general rule, insurance coverage for punitive damages is void as against public policy. *U.S. Fire Ins. Co. v. Goodyear Tire & Rubber Co.*, 726 F.Supp. 740, 742 (D.Minn. 1989), *aff'd* 920 F.2d 487 (8th Cir.1990). The jury in the underlying trial found that the Diocese and the Archdiocese acted with willful indifference or deliberate lack of concern and that they were reckless in the employment of Father Adamson. The jury awarded $2,000,000.00 in punitive damages in addition to the $812,250.00 in compensatory damages. Judge Jones reduced the punitive damages amount to $200,000.00. The award of punitive damages was truly punitive in nature.

The court concludes, therefore, that the punitive damage award is not insurable.

### B. ALLOCATION OF DAMAGES

Interstate alternatively argues for the existence of multiple occurrences which trigger multiple policies. Under this theory, separate underlying limits would apply to each policy period, and coverage would be allocated among the policies covering the years during which the abuse was committed.

Aetna argues for the existence of a single occurrence which triggers multiple policies. It contends that it is not liable for any injuries that occurred on or after September 1, 1980. It further contends that the damages for the injuries should be prorated among the insurers which provided coverage during the entire period of the sexual abuse.

Lloyd's argues for the existence of a single occurrence triggering only the policy in effect on the date of the first sexual encounter between Father Adamson and Tom Mrozka.

The Diocese of Winona and the Archdiocese of Minneapolis/St. Paul argue for the existence of a single occurrence triggering either one or multiple policies.

Federal district courts in Oregon, Louisiana and Missouri have interpreted similar insurance policy provisions and concluded that continuing sexual abuse constitutes a single occurrence triggering only the insurance policy in effect at the time of the first sexual encounter. *May v. Maryland Casualty Corp.*, 792 F.Supp. 63 (E.D.Mo.1992); *The Society of the Roman Catholic Church of the Diocese of Lafayette, Inc., et at. v. Arthur J. Gallagher & Co.*, Civil Action No. 88–0289 (W.D.La. 5/2/91); *Interstate Fire & Casualty v. Archdiocese of Portland*, 747 F.Supp. 618 (D.Ore.1990).

In *May*, the parties agreed on the application of the first encounter theory. In *Gallagher*, the Louisiana court adopted the reasoning of the Oregon court in *Interstate*. In *Interstate*, the court was confronted with virtually the same facts that exist in this case. The court applied a "cause theory" to determine the number of occurrences. The *Interstate* court reasoned that the Archdiocese had made only one decision or omission—the

decision to hire Father Laughlin or the omission to properly supervise him—which created a condition which caused multiple injuries. 747 F.Supp. at 624. The court found only a single occurrence. *Id.* The court explained,

> Although each molestation undoubtably contributed to Grgich's indivisible injury, these individual acts did not expose the Archdiocese to new liability, and thus are not occurrences triggering coverage. Instead, a single but continuous act was the proximate cause of the injury to Grgich, and this single but continuous act gave rise to only one claim. Any direct liability on the part of the Archdiocese stems from its negligence in supervising and failing to remove Father Laughlin from his position. Although this negligence was present in each of the policy years at issue, it was continuous negligence, and not a number of discrete episodes of negligence. This continuous negligence was the single proximate cause of the resulting injury to Grgich and constitutes a single occurrence under the terms of both the policies of Interstate and Lloyd's.

*Id.* at 624–5.

The *Interstate* court noted that the injury resulting from the continuous or repeated exposure to a condition must take place within the policy period. *Id.* at 625. In *Interstate,* the parties agreed that the injury to Grgich happened when Father Laughlin first molested him. *Id.*

In *Industrial Steel Container v. Fireman's Fund,* 399 N.W.2d 156 (Minn.App.1987), the Minnesota Court of Appeals applied the "actual injury" rule in a property damage case. *Industrial Steel* involved release of hazardous wastes from a landfill. The court began by recognizing that, "it is difficult in long-term exposure cases to determine whether there was property damage occurring during a specific policy period." *Industrial Steel,* 399 N.W.2d at 159. The *Industrial Steel* court noted that the Minnesota Supreme Court has held that the definition of occurrence of property damage is, "not the time the wrongful act was committed but the time the complaining party was actually damaged." *Id.* (citing *Singsaas v. Diederich,* 238

N.W.2d 878, 880 (Minn.1976)). The Minnesota Court of Appeals continued,

> We view this "actual injury" rule to be sufficiently broad to recognize that in cases involving long exposure to a toxic substance there can be damage with more than one manifestation and more than one insurance policy can afford coverage. We reject the argument that there can be only one occurrence in a case where property damage results from continuous or repeated conditions of exposure.
>
> It is undisputed that the contamination of the ground water and soil was an ongoing process occurring during the insurers' policy periods. Although the contamination was initially manifested before the effective dates of these policies, the leakage continued into the policy periods, resulting in continued manifestation of actual injury until at least 1983.

*Id.* at 159–60.

Although the Minnesota Court of Appeals made its *Industrial Steel* decision in a property damage context, its analysis is more appropriate than that employed by the Oregon, Louisiana and Missouri district courts. It is difficult to understand why a policy could not be triggered if continued negligence and injury were present in a policy issued after the first sexual encounter.

It is equally difficult to understand how all the damage can occur at the time of the first sexual encounter. Lloyd's, the Diocese and the Archdiocese attempt to distinguish *Industrial Steel* because it is a property damage case. They argue that a cause theory should apply in sex abuse cases because it is easy to determine when the personal injury occurs. They contrast that with the property damage cases, in which it is difficult to determine when the damage occurs. This assumes that all the damage in a sex abuse case occurs at the time of the first sexual encounter. Damage in a sex abuse case can, however, be caused by the continuous nature of the abuse. In these instances, it becomes difficult to determine when the damage to the sex abuse victim occurs.

This court finds, therefore, that although the negligent supervision of Father

Adamson was initially manifested in 1979, the negligent supervision continued and may have constituted occurrences triggering subsequent policies. The language of the policies is clear, however, that the negligent supervision can constitute only one occurrence per policy period.

 The court cannot grant Interstate's alternate motion for summary judgment, however, because issues of fact remain for trial as to the existence of negligent supervision and personal injury during each policy period.

Accordingly, IT IS ORDERED that:

The Diocese of Winona's motion for summary judgment declaring that a single occurrence has taken place (Docket No. 16 in Civil File No. 3–90–441) is DENIED.

The Archdiocese of Minneapolis/St. Paul's motion for summary judgment declaring that a single occurrence has taken place (Docket No. 23 in Civil File No. 3–90–441; Docket No. 20 in Civil File No. 3–90–527) is DENIED.

Underwriters at Lloyd's, London's motion for summary judgment (Docket No. 22 in Civil File No. 3–90–441; Docket No. 19 in Civil File No. 3–90–527) is DENIED to the extent that Lloyd's seeks judgment that there is no coverage because the injuries were expected and GRANTED to the extent Lloyd's seeks judgment that there is no coverage for punitive damages. Lloyd's alternate motion for summary judgment declaring that there was one occurrence which triggered coverage under the policies in effect at the time of the first sexual encounter between Father Adamson and Tom Mrozka (Docket No. 22 in Civil File No. 3–90–441; Docket No. 19 in Civil File No. 3–90–527) is DENIED.

Aetna Casualty & Surety Company's motion for summary judgment declaring that there was one occurrence which triggered multiple insurance policies (Docket No. 21 in Civil File No. 3–90–527) is DENIED.

Interstate Fire Insurance Company's motion for summary judgment is DENIED to the extent Interstate seeks judgment that there is no coverage because the injuries were expected and GRANTED to the extent Interstate seeks judgment that there is no coverage for punitive damages. Interstate's alternate motion for summary judgment that multiple occurrences existed which triggered multiple policies is DENIED.