FIRST DIVISION

September 8, 1997

No. 1-95-2348

THE ROMAN CATHOLIC DIOCESE OF JOLIET, INC., a Trust,

Plaintiff-Appellee,

and

ALAN GODFREY LEE, for Himself and as Representative of Certain Underwriters at Lloyd's, London, Signatory to Policy No. IL 1052 and CENTENNIAL INSURANCE COMPANY,

Defendants-Appellees,

v.

INTERSTATE FIRE INSURANCE COMPANY,

Defendant-Appellant.

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County.

No. 88 CH 10547

Honorable

Everette A. Braden and 

Thomas P. Durkin,

Judges Presiding.

JUSTICE O'BRIEN delivered the opinion of the court:

The defendant, Interstate Fire Insurance Company (Interstate), appeals from orders entered on cross-motions for summary judgment in a declaratory action determining (1) that the repeated sexual molestation of a minor by a negligently supervised priest affiliated with the plaintiff, the Roman Catholic Diocese of Joliet, Illinois, a trust (Diocese), constituted a single "occurrence" under policies issued by the defendants, and that (2) Interstate must indemnify the Diocese for all sums of money over and above a $75,000 self-insured retention (SIR) and $100,000 in primary insurance provided jointly by Underwriters at Lloyd's of London (80%) and Centennial Insurance Company (20%) (collectively referred to as Lloyd's).  We reverse.

The underlying lawsuit arose out of a sexual relationship between a priest affiliated with the Diocese and a female minor resulting in criminal action against the priest and a civil action against the Diocese for negligent supervision of the abusive priest.  The Diocese reached a settlement in the civil action and made payments of $300,000 to the minor and $150,000 to the minor's parents for parental loss of consortium.

Thereafter, the Diocese filed this declaratory action seeking reimbursement from its insurers.  The complaint alleged, 
inter
 
alia
:

"9. That in July of 1985, an 'accident, or happening, or event' took place which resulted in personal injury to an individual, who alleged that the proximate cause of the injury was the alleged negligence of the Diocese, which negligence also allegedly resulted in aggravating the injury in August of 1986."

A review of the policies attached to the complaint reveals that the Diocese maintained the following insurance coverage:

Period
 Diocese Lloyd's Interstate

SIR
 
Primary
 
Excess

I 9/1/84-9/1/85 $ 75,000 $100,000 $4.8 million

II 9/1/85-9/1/86 $100,000 $100,000 $4.8 million.

The Lloyd's policies are typical "occurrence" type policies which contain the following insuring agreement:

"Lloyd's] hereby agree[s] * * * to indemnify the [Diocese] for all sums which the [Diocese] shall be obligated to pay by reason of the liability imposed upon the [Diocese] by law * * * for damages * * * as more fully defined by the term 'ultimate net loss' on account of personal injuries * * * arising out of any occurrence happening during the period of Insurance."

The Lloyd's policies define "occurrence" as:

"an accident or happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results [
sic
] in personal injury, or a damage to property during the policy period.  All such exposure to substantially the same general conditions existing at or emanating from one location shall be deemed one occurrence."

Although the Interstate policies generally follow the form of the corresponding Lloyd's policies, Interstate modified its liability as of September 1, 1985, by the addition of an endorsement excluding coverage for claims arising from the Diocese's failure to control or prevent acts of sexual or physical abuse or molestation by any employee of the Diocese.  

Based upon the foregoing, the Diocese sought $100,000 from Lloyd's, and $250,000 of from Interstate, in reimbursement for the $450,000 in settlements paid to the minor and her parents.

Interstate answered the complaint, stating: 

"9. In answer to the allegations contained in Paragraph 9, Defendant admits that an incident allegedly occurred in July of 1985 resulting in personal injury to an individual and that the individual also alleged that the proximate cause of the injury was the alleged negligence of THE DIOCESE, which negligence also allegedly resulted in an aggravation of the injury in August of 1986 and thereafter."

The parties filed cross-motions for summary judgment.  The trial court conducted a hearing on the motions at which counsel for the Diocese noted:

"Interstate attaches a chart and it shows what went on during the period of 13 months *** [and it is] significant that in that chart spanning the 13 months [there is] no mention of any sexual abuse in July or August of '85.  Maybe it's just an omission, but without that, if that becomes a disputed fact issue, as I've stated in my brief, then I think if that is the case, then I think all the motions for summary judgment will sink and [be] drowned.

[Interstate] also point[s] out that there hasn't been any evidence that the damage to the victim, to the child, occurred in July and August of 1985." 

Furthermore, counsel for Interstate, pointed out:

"Number one, [counsel for the Diocese] in his complaint stated that it was alleged that sexual abuse took place in July and August of 1985.  
We admitted that those allegations existed.
  It is true from what I understand from Miss Dorf that an untranscribed deposition was taken at one time and this young lady indicated that such was true; however, if the court please, 
no one has asked the priest involved whether that is true, and if he denies that, then it's a question of credibility as to who will be believed.  If the priest should deny it and if the priest is found credible, then we have no coverage, because all sexual abuse took place in 1986.
"  (Emphasis added.)

Given the confusion as to whether sexual abuse first took place in July of 1985 or July of 1986, Interstate offered the following suggestion:

"Let us assume for the purposes of summary judgment, that this is all true.  
If
 it is true, it is our position we owe not one thin dime in this matter."   (Emphasis added.)

This suggestion gave rise to the following colloquy:

"THE COURT: * * * According to your position here, [Interstate Counsel], it is your contention that no injury occurred during the first policy period, is that right?

[INTERSTATE COUNSEL]:  No, Judge.  For purposes of 
this
 summary judgment, we will -- they alleged an injury occurred during the first policy period.  We admitted that allegation whether in fact that's true or not we don't know.

THE COURT:  According to the coverage of your policy, you know, *** according to the chart, they have an incident with the priest and the girl.  That's not an injury.

[INTERSTATE COUNSEL]:  No, Sir.

THE COURT:  And then the priest pays tuition.

[INTERSTATE COUNSEL]:  That's right.

THE COURT:  All of that was during the first policy period.

[INTERSTATE COUNSEL]:  That was and according to what the young lady said in all candor with the court * * * in a deposition that was never transcribed she said that more than that occurred.  
We don't know the truth of it.  But for the purposes of the legal question before this court, it is enough for the court to assume that that's correct.

What is the outcome? *** If [the] outcome is that both policy periods were triggered, because *** injury happened in both policy periods ***, then there is sufficient underlying coverage to cover the $450,000 involved here.  Because there is at least $400,000 for *** those policy periods of SIR and underlying limits furnished by [the Diocese and Lloyd's]." (Emphasis added.)

Following this, counsel for the Diocese stated:

"The reason counsel has clearly stated for the purpose of this motion we will admit sexual abuse took place July and August.  I think they want it both ways.  All right.  There's [a] fact issue for the purpose of this motion [whether] sexual abuse occurred in July and August of '85, however -- however, after the motion for summary judgment, we may want to litigate the underlying issue.  We may want to debate that.  I don't think you can have it both ways."

The trial court granted the Diocese's motion, denied Interstate's motion, and ordered Interstate and Lloyd's to indemnify the Diocese for all sums of money over and above the $75,000 SIR limit applicable in July of 1985.  Interstate appealed.  We reverse.

Summary judgment is proper only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  735 ILCS 5/2-1005(c) (West 1994).  We review the matter 
de
 
novo
. 
Outboard Marine Corp. v. Liberty Mutual Insurance Co.
, 154 Ill. 2d 90, 102 (1992).  In so doing, we must construe the admissions, exhibits, and pleadings on file strictly against the movant and liberally in favor of the nonmoving party. 
Outboard
, 154 Ill. 2d at 131-32.  For the sake of clarity, we will address each motion independently.

The Diocese's Motion

In support of its motion for summary judgment, the Diocese argued that Interstate had admitted the existence of abuse in July of 1985 in its answer.  Relying upon Interstate's purported "admission" and the first encounter rule, which holds that a single occurrence begins at the time of the first libidinous encounter and is the cause of all subsequent injury, the Diocese reasoned that the minor's entire $300,000 settlement should be allocated to period I.  The Diocese further reasoned that because the parent's loss of consortium claim was derived from the same "occurrence" that caused their daughter's injury, it too should be allocated to period I and paid by Interstate.  Accordingly, the Diocese urged the trial court to apportion the combined $450,000 loss attributable to both settlements thusly: 

Period
 Diocese Lloyd's Interstate

SIR
 
Primary
 
Excess

I 9/1/84-9/1/85 $ 75,000 $100,000 $275,000. 

As previously noted, the trial court entered judgment for the Diocese.  It concluded its 27-page decision finding that, as a matter of law, the negligence of the Diocese was a single occurrence and that all insurance coverage existing at the time of the first sexual encounter was triggered.  In so doing, the trial court implicitly adopted the first encounter rule advocated by the Diocese.  It then ordered Interstate and Lloyd's to indemnify the Diocese for all sums of money over and above the $75,000 SIR limit applicable in July of 1985.  In so doing, the trial court implicitly adopted the Diocese's argument that Interstate had admitted the first instance of abuse had occurred in July of 1985, during period I, when the Diocese maintained a $75,000 SIR and the excess insurance policy issued by Interstate did not contain the exclusionary clause.

In reviewing the trial court's decision to grant the Diocese's motion for summary judgment, we consider first Interstate's answer to paragraph 9 of the complaint for declaratory judgment.  Interstate's answer "admits" only "that an incident 
allegedly
 occurred in July of 1985" (emphasis added).  Construing this against the Diocese and liberally in favor of Interstate, we conclude that Interstate's admission was limited to the fact that a complaint had been filed against the Diocese alleging sexual abuse by a priest in July of 1985, not that the abuse had, in fact, occurred on that date.  

Next, we consider the relevant excerpts from the transcript of the hearing on the motion.  In so doing, we note that the parties were arguing their cross-motions simultaneously and without benefit of settled opinion as to the appropriate method for allocating loss.  Interstate was thus placed in the unusual position of having to deny that any sexual misconduct occurred in 1985 in order to avoid the entry of summary judgment against it on the Diocese's motion (
Outboard Marine Corp.
, 154 Ill. 2d 90 (summary judgment improper where there are issues of material fact)), while simultaneously assuming that it did occur in 1985 for purposes of its own motion (154 Ill. 2d  at 131-32 (pleadings must be construed strictly in favor of the nonmovant)).

In light of the foregoing, and construing the relevant hearing excerpts strictly against the Diocese and liberally in favor of Interstate, we conclude that Interstate's purported "admission" was nothing of the sort.  Rather, deconstruction of the parties' arguments at the hearing clearly reveals that Interstate steadfastly denied liability under the first encounter rule on grounds there was no evidence the minor had been molested in July of 1985, during period I, as had been alleged in the underlying complaint for negligent supervision.  Interstate allowed the court to assume that the first libidinous conduct occured in July of 1985 for the limited purpose of considering its own motion and only because it was required to do so.  Even were this not the case, however, saying "we assume for the purposes of summary judgment" is much the same as saying "even assuming without deciding."  Neither admits unequivocally the truth of the matter asserted.

Because we find that Interstate's answer to the complaint and its arguments before the trial court in relation to the Diocese's motion for summary judgment admitted only the existence of the allegation of abuse in July of 1985, and not that the abuse, in fact, occurred at that time, the date of the priest's first abuse was an issue of material fact precluding summary judgment in favor of the Diocese.

Interstate's Motion

In support of its motion for summary judgment, Interstate argued that even assuming for the purposes of summary judgment that  the minor had been molested in July of 1985 as alleged, it "owe[d] not one thin dime" in the matter.  Interstate reasoned that, assuming the minor suffered abuse in both periods I and II, the policies for each had been triggered such that the loss should be apportioned between them.  Interstate further reasoned that it was not responsible for any portion of the settlement for the parents' loss of consortium claim because the parents suffered no injury until they learned about the priest's abuse of their daughter in September of 1986, long after the exclusionary clause had taken effect.  Accordingly, Interstate believed the trial court would be required to apportion the $300,000 loss attributable to the minor's settlement thusly:

Period
 Diocese Lloyd's 

SIR
 
Primary
 

I 9/1/84-9/1/85 $ 75,000 up to $100,000 

II 9/1/85-9/1/86 $100,000 up to $100,000.

In reviewing the trial court's decision to deny Interstate's motion for summary judgment, we consider first paragraph 9 of the Diocese's complaint for declaratory judgment.  The Diocese's complaint alleges "[t]hat in 
July of 1985
, an 'accident, or happening, or event' took place which resulted in personal injury to an individual, who alleged that the proximate cause of the injury was the alleged negligence of the Diocese, which negligence also allegedly resulted in aggravating the injury in August of 1986" (emphasis added).  Construing this against Interstate and liberally in favor of the Diocese, we are bound to assume, as Interstate suggested below, that abuse had, in fact, occurred in July of 1985.  We reiterate for the sake of clarity that this assumption is applicable and relevant only to Interstate's motion and is not, nor should it have been held to be, an admission of fact to be considered as part of the Diocese's cross-motion.

Assuming, therefore, that the abuse began in July of 1985 during period I, and continued through August of 1986, the end of period II, there are numerous methods for allocating loss between the two insurance periods, some of which would result in liability for Interstate (
e.g.
, the first encounter rule) and some of which would not (
e.g.
, a 
pro
 
rata
 apportionment).  Accordingly, the outcome of Interstate's motion turns on the selection and application of the proper method of loss allocation.  Therefore, we next consider the proper method for allocating loss under the facts presented.  

As previously noted, the Diocese argues for application of the first encounter rule, which holds that a single occurrence begins at the time of the first libidinous encounter and is the cause of all subsequent injury.  For reasons that follow, we reject the first encounter rule and adopt instead a 
pro
 
rata
 apportionment method for allocating loss.

First, we acknowledge that negligent "supervision is (or can be) [a] discrete" rather than "a unitary act."  See 
Lee v. Interstate Fire & Casualty Co.
, 86 F.3d 101 (7th Cir. 1996) (applying Rhode Island law).  Although an employer may initially leave an employee to his or her own devices, the decision not to supervise may be revisited.  Thus, if a diocese receives warnings about a priest's misconduct and fails to take remedial action, then a second occurrence takes place and policy coverage is triggered again by any subsequent injury resulting from the omission.  
Lee
, 86 F.3d at 104-05.  In the instant case, it appears undisputed that the Diocese learned of the abusing priest's inappropriate behavior in early 1986, during period II, but failed to take remedial action.  Accordingly, the Diocese's negligent supervision of the abusing priest constituted a second occurrence during period II and coverage under that policy was triggered when the priest subsequently molested the minor.

Even assuming, however, that the Diocese did not learn of the priest's abusive behavior in early 1996, such that all of the molestations suffered by the minor stemmed from a "unitary" act of the Diocese, there were two "occurences."  As previously noted, the Lloyd's policies define "occurrence" as "a continuous or repeated 
exposure
 to conditions which *** result in personal injury *** during the policy period."  The definition further states that "[a]ll such 
exposure
 to substantially the same general conditions existing at or emanating from one location shall be deemed one occurrence." (Emphasis added.)  A plain reading of this definition reveals that negligent supervision alone would not trigger any obligation on the part of the insurers.  Rather, it is the repeated "exposure" of the minor to the negligently supervised priest that could constitute an occurrence and provide the basis for indemnification.  See 
Interstate Fire & Casualty Co. v. Archdiocese of Portland
, 35 F.3d 1325, 1329 (9th Cir. 1994) (applying Oregon law); 
Mason v. Home Insurance Co.
, 177 Ill. App. 3d 454, 532 N.E.2d 526 (1988) (holding each incident in which restaurant served tainted food to patron was a separate occurrence).  Accordingly, the minor's exposure to the negligently supervised priest in each of the policy periods constituted a separate occurrence.  

Second, while the insurance policies cover only occurrences that happen "during the period of insurance," the assuring clause does not require that all damages occur within the policy period.  Rather, it provides without qualification that indemnification extends to all "damages *** on account of personal injuries *** arising out of any occurrence."  Thus, the policies cover consequential damages resulting from a molestation, but they exclude from coverage injuries occurring outside the policy period.  When one considers that a molestation occurring after the policy period is not a consequence of the first molestation (which is covered), but is a new injury with its own resulting damages (which is excluded from coverage), it becomes clear that application of the first encounter rule conflicts with the expressed intent of the insurance companies to limit their coverage to damages emanating from molestations taking place during their policy period.  See 
Diocese of Lafayette & Lake Charles, Inc. v. Interstate Fire & Casualty Co.
, 26 F.3d 1359, 1366 (5th Cir. 1994) (applying Louisana law).  

Finally, although the first encounter rule may apply where the parties agree that all the damage occurred at the time of the first sexual encounter, such is not the case here.  
Nor can we make such a ruling as a matter of law.  As a practical matter, "[d]amage in a sex abuse case can *** be caused by the continuous nature of the abuse," and "[i]n such instances it becomes difficult to determine when the damage to the sex abuse victim occurs."  
Diocese of Winona v. Interstate Fire & Casualty Co.
, 841 F. Supp. 894, 898 (D. Minn. 1992) (applying Minnesota law).  Accordingly, we conclude that in the event of ongoing sexual abuse spanning multiple policy periods, application of the first encounter rule is both inappropriate and inequitable.  At its worst, such a rule could deny coverage for a child who was molested a day before the Diocese procured coverage even though separate molestations continued through the policy year and beyond.  841 F. Supp. at 898-99; 
Diocese of LaFayette 
, 26 F.3d at 1366.  

For all of the foregoing reasons we conclude that, where, as here, the negligent supervision of a priest manifests itself as abuse in multiple policy periods, the negligent supervision constitutes an occurrence in each policy period and each policy's coverage is triggered by the first instance of abuse occurring during its period of coverage.  See generally 
Lee
, 86 F.3d 101; 
Interstate
, 35 F.3d 1325; 
Mason
, 177 Ill. App. 3d 454, 532 N.E.2d 526 (1988); 
Diocese of Lafayette
, 26 F.3d 1359; 
Diocese of Winona
, 841 F. Supp. 894.  Of course, if the number of molestations were known and the damages from each molestation could be proved, we could allocate the loss(es) according to the actual injury suffered during each policy period.  Unfortunately, there is no measure of the amount of damage caused by the molestations during any given policy period.  This leaves us with only one avenue under the policies' language, which is to allocate the loss based upon the policy periods.  We therefore conclude that the loss(es) attributable to the abuse must be apportioned, 
pro
 
rata
, according to the percentage of the time or period of each child's molestation occurring during each policy period.  See 
Diocese of LaFayette
, 26 F.3d at 1366-67.

Because we find that the loss must be apportioned, 
pro
 
rata
, between all relevant policy periods, Interstate cannot be and should not have been held liable for any portion of the minor's settlement.  As Interstate suggests, even were we to assume for purposes of Interstate's motion that the minor had been molested in July of 1985, during period I, and that the molestation continued into period II as alleged, then the $300,000 settlement amount was amply covered by the Diocese's SIR and the primary insurance provided by Lloyd's during those two policy periods.  If, however, the minor was not molested until July of 1986, then Interstate has no liability pursuant to the exclusionary clause added to its policy the previous September.

Furthermore, Interstate cannot and should not have been held liable for any portion of the parent's settlement.  At the hearing, Interstate argued that it was not responsible for any portion of the settlement for the parents' loss of consortium claim because the parents suffered no injury until they learned about the priest's abuse of their daughter in September of 1986, long after the exclusionary clause had taken effect.  The Diocese, on the other hand, argued that because the parents' loss of consortium claim was derived from the same "occurrence" that caused their daughter's injury, it too should be allocated to period II and paid by Interstate.  On appeal Interstate further argues that, in light of the decision in 
Dralle v. Ruder
, 124 Ill. 2d 61, 529 N.E.2d 209 (1988), 
rev'g
 148 Ill. App. 3d 961, 500 N.E.2d 514 (1986), it is not responsible for any portion of the parents' loss of consortium claim because such claims are not recognized in Illinois unless the child dies as a result of his or her injuries.  The Diocese now counters that Interstate's reliance upon the Illinois Supreme Court's decision in 
Dralle
 is misplaced.  The Diocese reasons that a settlement is covered under the policy if it "'was responding to a reasonable anticipation of personal liability rather than acting as a mere volunteer'" (
United States Gypsum Co. v. Admiral Insurance Co.
, 268 Ill. App. 3d 598, 635, 643 N.E.2d 1246, 1249 (1994), quoting 
St. Paul Fire & Marine Insurance Co. v. Michelin Tire Corp.
, 12 Ill. App. 3d 165, 169, 298 N.E.2d 289, 292 (1973)), and that at the time of the settlement at issue here the Illinois Appellate Court recognized a parent's right to recovery for loss of consortium for the nonfatal injuries of his or her minor children (
see
 
Dralle v. Ruder
, 148 Ill. App. 3d 961, 500 N.E.2d 514 (1986), 
rev'd
, 124 Ill. 2d 61, 529 N.E.2d 209 (1988).

We agree with the Diocese that the parents' $150,000 settlement arose from a derivative claim.  "If the [minor] had not been molested, the parents would have gone unharmed.  Thus, the parents' injury do[es] not amount to separate ‘occurrence’ under the policies."  
Diocese of Lafayette
, 26 F.3d at 1364-65.  We also agree with the Diocese that the parents' settlement was covered under the period I policy because the Diocese "was responding to a reasonable anticipation of personal liability," under the then- applicable appellate court decision in 
Dralle
, 148 Ill. App. 3d 961, 500 N.E.2d 514.  The foregoing notwithstanding, we find the requirement that the damages be apportioned 
pro
 
rata
 means Interstate still owes nothing.  

Assuming, as we must, that the abuse began in July of 1985, during period I, and that the abuse continued through period II,  then 
pro
 
rata
 apportionment requires that two-fourteenths of the entire $450,000 loss be allocated to period I for July and August of 1985 and twelve-fourteenths of all damages be allocated to period II for September 1985 through the end of August 1986.  Mathematically this works out to $64,285.72 during period I and $387,714.28 during period II.  The $64,285.72 is more than adequately covered by the Diocese's self-insured retention and primary insurance provided by Lloyd's, and Interstate's exclusionary clause relieves it of liability for any portion of the $387,714.28 owed for period II.

Conclusion

For the reasons expressed above, we reverse both the trial court's grant of the Diocese's motion for summary judgment and its denial of Interstate's motion for summary judgment.  Accordingly, summary judgment is hereby entered in favor of Interstate.  155 Ill. 2d R. 366(a)(5) (reviewing court has power to enter any judgment that ought to have been given or made).  In reaching this decision, we are mindful of the Diocese's argument that Interstate has improperly and unfairly been allowed to "assume" a point in expectation that the trial court would rule in its favor, yet argue the same point on appeal when the trial court ruled against it.  In common parlance, the Diocese objects to Interstate having "two bites at the apple."  The Diocese's argument is not well taken.  Interstate was entitled to have its defense to the Diocese's motion for summary judgment considered on its own merits and apart from its arguments in support of its own motion for summary judgment.  

Reversed; summary judgment entered in favor of appellant.

CAHILL, J., and THEIS, J., concurring.