# United States Court of Appeals
### For the Eighth Circuit

_____

No. 13-2776

_____

Fellowship of Christian Athletes

*Plaintiff - Appellee*

v.

AXIS Insurance Company

*Defendant - Appellee*

Ironshore Specialty Insurance Company

*Defendant - Appellant*

RSUI Indemnity Company

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: April 16, 2014
Filed: July 11, 2014

_____

Before WOLLMAN, BYE, and SHEPHERD, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Nehmson Sanon and Gael Chrispin drowned at a pool party sponsored by the Fellowship of Christian Athletes (the FCA). Nehmson's and Gael's survivors filed suit against the FCA in Iowa state court, alleging negligence and loss of consortium. The FCA, in turn, filed this declaratory judgment and breach of contract action against its insurers in federal district court, seeking a "judicial determination as to whether the Iowa Claims constitute one or two occurrences" under its commercial general liability insurance policy. The district court[1] held that there existed only one occurrence and granted summary judgment in favor of the primary insurer. We affirm.

## I. Background

During the summer of 2010, Nehmson and Gael attended a youth sports camp organized and operated by the FCA. Neither boy could swim, and their camp permission forms indicated that they were non-swimmers. On July 14, 2010, from 8:30 p.m. to 9:30 p.m., the FCA held a pool party for its campers at the Pella Aquatic Center in Pella, Iowa. The FCA campers had exclusive use of the pool, and all campers attended. After the pool party had ended, the FCA staff realized that Nehmson and Gael were missing.

Nehmson and Gael had drowned. Their bodies were found lying side-by-side, at the bottom of the deep end of the pool, near the main drain. Autopsy reports deemed the boys' cause of death as drowning and their manner of death as accidental. The death certificate for Nehmson listed his time of death as 10:44 p.m.; Gael's listed 10:42 p.m.

Nehmson's and Gael's families' state-court complaint alleges that the FCA was negligent in the following ways: by allowing Nehmson and Gael to enter the Pella

---

[1]The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

Aquatic Center after their parents had signed permission forms indicating that the boys could not swim; by allowing Nehmson and Gael to enter the Pella Aquatic Center unsupervised, knowing that both boys were unable to swim; by failing to properly train and supervise its camp counselors; by taking the boys from the camp to the pool when they were unable to swim; and by failing to exercise reasonable care under the circumstances.

The FCA was insured under three policies. AXIS Insurance Company (Axis) primarily insured the FCA under a commercial general liability policy. The Axis policy provided coverage of $1 million per occurrence and limited Axis's liability to $5 million in the aggregate. The FCA also carried two umbrella policies, one issued by Ironshore Specialty Insurance Company (Ironshore) and one issued by RSUI Indemnity Company (RSUI). The Ironshore policy provided up to $10 million in coverage in excess of Axis's policy. The RSUI policy provided up to $5 million in coverage in excess of the Axis and Ironshore policies.

The FCA filed suit against the insurance companies, seeking a determination whether the deaths were caused by one occurrence or two occurrences under the Axis policy. The Axis policy provides that Axis "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies." The policy applies if the bodily injury is caused by an "occurrence," which is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

Axis and Ironshore filed cross-motions for summary judgment. The district court granted Axis's motion and held that the drownings were caused by one occurrence under the Axis policy. Accordingly, Axis's liability is limited to $1 million, and Ironshore may be liable for damages over $1 million. Ironshore appeals, arguing that there were two occurrences under the Axis policy and that Axis's liability thus extends to $2 million.

## II. Discussion

We review *de novo* the district court's grant of summary judgment.  W3i Mobile, LLC v. Westchester Fire Ins. Co., 632 F.3d 432, 436 (8th Cir. 2011).  The parties agree that Missouri law governs our interpretation of the Axis policy and that we should apply the "cause" approach set forth in Kansas Fire & Casualty Co. v. Koelling, 729 S.W.2d 251 (Mo. Ct. App. 1987), to determine whether there was one occurrence or two.

In Koelling, the Missouri Court of Appeals explained that under the cause approach, "an insured's single act is considered the accident from which all claims flow." Id. at 252.  In that case, the insured was traveling east on a two-lane road when he tried to pass a car by driving into the westbound lane of traffic.  Id.  He collided with a truck that was traveling west "and almost simultaneously hit the car he was trying to pass."  Id.  The Missouri Court of Appeals determined that the insured's single negligent act caused both claims and thus held that there was one occurrence under the insurance policy.  Koelling distinguished Liberty Mutual Insurance Co. v. Rawls, 404 F.2d 880 (5th Cir. 1968) (per curiam), a case that also involved an insured's vehicle and two other vehicles.  In Rawls, the impact between the insured's vehicle and the first vehicle was separated from its impact with the second vehicle by two to five seconds and thirty to three hundred feet.  Id. at 880.  Rawls held that there were two accidents because "the only reasonable inference is that [the insured] had control of his vehicle after the initial collision."  Id.  Koelling distinguished Rawls by explaining that "there was evidence [in Rawls] of a time lapse between collisions during which the insured could [have] regain[ed] control of his car[,]" whereas the evidence in Koelling showed that "the collisions took place almost simultaneously and the insured never had a chance to regain control of his car."  Koelling, 729 S.W.2d at 252-53.

Ironshore argues that, under Koelling, the cause approach requires that the accidents occur simultaneously or almost simultaneously to be considered one occurrence and that the almost simultaneous standard "is a matter of a few seconds, not the 60 minute time frame during which Chrispin and Sanon drowned." Appellant's Br. 12. In arguing for the application of this "time and space" component, Ironshore relies upon the Illinois Supreme Court's decision in Addison Insurance Co. v. Fay, 905 N.E.2d 747 (Ill. 2009). In that premises liability case, two boys became trapped in an excavation pit on the insured's property and died of hypothermia. Id. at 750. The court determined that the insured's negligent omission in failing to secure and control the property caused the boys' injuries and that the insured committed no intervening negligent act between the injuries of each boy. Id. at 754-55. The court sought to limit the potential of "allowing multiple injuries, sustained over an open-ended time period, to be subject to a single, per-occurrence limit." Id. at 755. Accordingly, it modified the causation approach to include a time and space test and held that—even though there was only one negligent omission—there were two occurrences under the policy because the insurance company could not prove that "the two boys' injuries were so closely linked in time and space as to be considered one event." Id. at 757.

Missouri has not adopted the time and space test set forth in Fay, and we decline to apply it in this case. See Allstate Prop. & Cas. Ins. Co. v. McBee, No. 08-0534, 2009 WL 1124973, at *6 (W.D. Mo. Apr. 27, 2009) (noting that Fay "seems . . . to have moved [from a cause test] toward use of an effects test"). Although the passage of time is relevant to the inquiry whether a single act has caused multiple claims, Koelling teaches that two occurrences result when an intervening act causes the second claim. In Rawls, for example, the time period—though short—was sufficient to allow the insured to regain control of his car, and thus, an intervening negligent act caused the insured to hit the second car. In Koelling, however, no intervening negligent act caused the second crash, and thus there was only one cause and only one accident or occurrence. If we were to adopt Ironshore's proposed

"almost simultaneous" test, we would focus on the effect of the insured's negligent act or acts—not the cause or causes of the injuries—and arbitrarily require that the injuries occur within seconds of each other to be considered a single occurrence. The appropriate inquiry under Missouri's interpretation of the cause approach, however, is whether the "insured's single act is considered the accident from which all claims flow." See Koelling, 729 S.W.2d at 252.

We must consider, then, the insured's conduct that allegedly caused the two drownings in this case. Ironshore argues that "[t]he alleged negligence was not committed by the FCA, but by its employees." Appellant's Br.15  It contends that there are two separate occurrences under the Axis policy because the underlying lawsuit alleges negligent supervision and the boys were under the care of two different camp counselors. Ironshore's focus on the two camp counselors, however, is misplaced. Under Koelling, we consider the conduct of the insured. Here, FCA is the insured entity and the alleged tortfeasor, and thus we consider its conduct. The underlying litigation alleges that the FCA was negligent in allowing Nehmson and Gael to attend the pool party while knowing that the boys could not swim and in failing to properly train and supervise the camp counselors. Moreover, it is undisputed that the boys arrived at the Pella Aquatic Center at the same time, swam in the pool during the same one-hour period, and were discovered at the bottom of the pool at the same time. Accordingly, the FCA's alleged negligent conduct constituted one occurrence under the Axis policy because the underlying lawsuit alleges that the drownings were caused by "exposure to substantially the same general harmful conditions."

III.

The judgment is affirmed.

_____

-6-