In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 23-2712

STARSTONE INSURANCE SE,

*Plaintiff-Appellant,*

*v.*

CITY OF CHICAGO, ILLINOIS,

*Defendant-Appellee.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 20 CV 2475 — **John Robert Blakey**, *Judge.*

———————————

ARGUED SEPTEMBER 5, 2024 — DECIDED APRIL 2, 2025

———————————

Before EASTERBROOK, KIRSCH, and KOLAR, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Released after spending more than 20 years in prison for murder, Jacques Rivera sued Chicago and several of its police officers under 42 U.S.C. §1983 for violating his civil rights. A jury returned verdicts in his favor exceeding $17 million; his lawyers then sought more than $6 million in attorneys' fees and costs. The case was settled for $18.75 million, of which at least $3.75 million represents attorneys' fees and costs.

Chicago has an insurance policy, issued by Starstone Insurance SE, covering the band of liability between $15 and $20 million. (Chicago bore the first $15 million itself.) Starstone rejected Chicago's demand for $3.75 million in indemnity, asserting that its policy covers only damages. Attorneys' fees and costs (the $3.75 million) differ from damages, so Starstone insisted that Chicago bear the full loss. Starstone filed this suit seeking a declaratory judgment that it need not pay. A district court, however, sided with the City, 2022 U.S. Dist. LEXIS 173936 (N.D. Ill. Sept. 26, 2022), and Starstone has appealed.

Subject-matter jurisdiction is the first question. Starstone, which has its headquarters in Schaan, Liechtenstein, invoked 28 U.S.C. §1332(a)(2), which supplies jurisdiction between "citizens of a State and citizens or subjects of a foreign state". Chicago is a citizen of Illinois for this purpose, see *Moor v. Alameda County*, 411 U.S. 693, 717–21 (1973), and Starstone claims to be a citizen of Liechtenstein under the definition in §1332(c)(1): "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business". This poses the question whether Starstone is a "corporation".

The "SE" in its name stands for "Societas Europaea". In Liechtenstein this form of organization is known as a Europäische Gesellschaft; Societas Europaea is a translation into Latin. (In English it would be "European Company".) But names are not dispositive. Nor is the body of law under which the form was created. The Societas Europaea form was created, not by Liechtenstein, but by the European Union's European Company Statute. See *Pioneer Trail Wind Farm, LLC v. FERC*, 798 F.3d 603, 605–06 (7th Cir. 2015). A firm registered

under this statute can do business throughout the European Union; Liechtenstein recognizes the registration as effective.

What matters to the definition in §1332(c)(1) is whether the entity, no matter what it is called and no matter where it is located, has the attributes of a "corporation" as understood in the law of the United States. We have identified these attributes as perpetual existence with a legal personality distinct from that of investors, shares that are tradeable (in principle, at least), and limited liability. See, e.g., *Lear Corp. v. Johnson Electric Holdings Ltd.*, 353 F.3d 580 (7th Cir. 2003) (a Bermuda company limited by shares, with its principal place of business in China, is a "corporation" because it has these attributes); *White Pearl Inversiones S.A. (Uruguay) v. Cemusa, Inc.*, 647 F.3d 684 (7th Cir. 2011) (a Uruguayan sociedad anónima likely is a "corporation" because it has these attributes); *BouMatic, LLC v. Idento Operations, BV*, 759 F.3d 790 (7th Cir. 2014) (a Netherlands besloten vennootschap met beperkte aansprakelijkheid is a "corporation" because it has these attributes even though trading the shares is limited by a buy-sell arrangement). We have never considered whether a Societas Europaea qualifies as a "corporation"—nor has any other court of appeals—but from what we can see it has the essential attributes of one. Accord, *SYNY Logistics, Inc. v. Great Lakes Insurance SE*, 696 F. Supp. 3d 504, 508–09 (N.D. Ill. 2023). We therefore proceed to the merits.

Starstone has assumed throughout that the $15 million in Chicago's layer of responsibility is all damages, while the remaining $3.75 million is all attorneys' fees and costs. This is far from clear. Maybe Chicago covered the legal fees with the first $3.75 million of its payment to Rivera, so that what it seeks from Starstone is all damages. Or maybe, since money

is fungible, the fees should be apportioned pro rata—$3.75 million is 20% of $18.75 million, which would imply that the indemnity Chicago seeks from Starstone represents $3 million of damages and $750,000 of fees and costs. Yet Chicago has not advanced an argument along these lines. It has been content to accept Starstone's assumption that the indemnity it wants is all legal fees plus costs. It prevailed in the district court on that assumption, which may be why the City indulges it on appeal.

Starstone contends that legal fees and costs are not damages. Granted. Under the American Rule, fees and costs come on top of damages, and then only if authorized by statute or contract. The fees and costs awarded to Rivera are statutory. See 28 U.S.C. §1920 (costs); 42 U.S.C. §1988(b) (legal fees). But this does not get Starstone very far, because its policy is not limited to damages.

The policy's main coverage clause reads:

> We shall pay you, or on your behalf, the ultimate net loss, in excess of the retained limit, that the insured becomes legally obligated to pay by reason of liability imposed by law or assumed under an insured contract because of bodily injury or property damage arising out of an occurrence during the Policy Period.

The district court concluded that the whole $18.75 million was an "ultimate net loss" that Chicago was "legally obligated to pay by reason of liability imposed by law". That conclusion is hard to avoid. Awards under §1920 and §1988(b), no less than awards under §1983, are amounts that Chicago is "legally obligated to pay". (Starstone does not make anything of the fact that the $18.75 million reflects a settlement; the jury verdict plus a §1988(b) award likely would have exceeded $18.75 million.)

Illinois law, which governs the interpretation of this policy, provides that language in an insurance contract must be taken to mean what the words say. See, e.g., *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 362–63 (2006). An ordinary reader thinks that "ultimate net loss" means the amount the insured is out of pocket, and "legally obligated to pay" means "legally obligated to pay" rather than some amended version such as "legally obligated to pay *as damages*".

Still, Starstone maintains, the $3.75 million does not "compensate" Rivera, as opposed to his legal team. The word "compensate" does not appear in the insuring clause we have quoted, though it does appear in a separate "Errors and Omissions Liability" clause:

> We shall pay you, or on your behalf, the ultimate net loss, in excess of the retained limit, that the insured becomes legally obligated to pay to compensate others for loss arising out of your wrongful act that takes place during the Policy Period and arises solely in performing or failing to perform duties of the public entity.

The City does not invoke the "Errors and Omissions Liability" clause but does rely on a third coverage clause, which likewise uses the word "compensate":

> We shall pay you, or on your behalf, the ultimate net loss in excess of the retained limit that the insured becomes legally obligated to pay to compensate others for loss arising out of … imprisonment … which arise[s] solely from your performance of or failure to perform duties as a public entity, if: (1) [t]he criminal or civil charges that form the basis for the … imprisonment … are dismissed during the Policy Period; or (2) [t]he conviction of the claimant based on the … imprisonment [sic] … is voided during the Policy Period.

We do not see how the word "compensate" helps Starstone. Payment of legal fees compensates a prevailing plaintiff.

Suppose this had been an ordinary tort suit, governed by the American Rule under which Rivera had to pay his lawyers. If he had collected $17 million under the jury's verdict and paid counsel a 20% contingent fee, he would have been left with $13.6 million (and counsel would have taken home $3.4 million). Awards of legal fees under §1988(b), like awards of costs under §1920, are designed to ensure that a victim receives full compensation, without a reduction to pay lawyers and cover the expenses of litigation. See, e.g., *Robbins v. MED-1 Solutions, LLC*, 13 F.4th 652, 659 (7th Cir. 2021). This means that the contested $3.75 million is a form of compensation to the victim. It relieves the victim of a (large) expense that otherwise would have reduced the net recovery.

Starstone relies on one final part of the policy. Exclusion V.BB carves out "injunctions, equitable relief, or any form of relief other than monetary damages". The insurer has the burden of establishing the effect of an exclusion. *Addison Insurance Co. v. Fay*, 232 Ill. 2d 446, 454 (2009). The district court read this exclusion as relieving Starstone from any need to reimburse the City for costs it incurred in complying with an injunction or some other award of prospective relief. That's what the policy means by "form of relief," the judge thought. Since neither the verdict nor the settlement entails equitable relief, the district court deemed this clause irrelevant. The only "form of relief" Rivera sought or obtained is money.

We appreciate the possibility that a state court could read this language to rule out indemnity for anything other than "monetary damages" even though the clause as a whole seems addressed to equitable relief. So we ask: Has any

decision in Illinois given that reading to this (or similar) language in an insurance policy? Starstone did not bring such a decision to our attention, and we could not find one—not in Illinois and not in any other state.

Starstone did locate *Dearborn v. Insurance Co. of Pennsylvania*, 2004 U.S. App. LEXIS 26626 (6th Cir. Dec. 17, 2004), which understood language in the Michigan Telecommunications Act to treat attorneys' fees as taxable costs rather than damages. That does not tell us much about how Illinois insurance law treats the language in Starstone's policy. Meanwhile the Tenth Circuit has held, under Oklahoma insurance law, that language similar (though not identical) to Starstone's policy allows indemnity of attorneys' fees as "claim expenses". *Employers Reinsurance Corp. v. Mid-Continent Casualty Co.*, 358 F.3d 757 (10th Cir. 2004). And *Insurance Co. of Pennsylvania v. Long Beach*, 2009 U.S. App. LEXIS 15825 (9th Cir. July 17, 2009), holds that California insurance law requires legal fees to be indemnified under a policy that covers "ultimate net loss". Neither state nor federal appellate courts seem to have rendered decisions about similar language in the last 16 years. Our independent reading of this language accords with that of the district court. We cannot be sure that it reflects Illinois law, but in the absence of material Illinois cases it is the best we can do.

AFFIRMED