NOTICE
Decision filed 06/11/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 250174-U

NO. 5-25-0174

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Bond County. |
| | ) | |
| v. | ) | No. 24-CF-121 |
| | ) | |
| ANDREW J. WALKER, | ) | Honorable |
| | ) | Christopher J.T. Bauer, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE BARBERIS delivered the judgment of the court.
Justices Moore and Boie concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm the circuit court's orders denying defendant pretrial release and denying defendant's motion for relief where the court did not err by determining that defendant posed a high likelihood of willful flight.

¶ 2    Defendant, Andrew J. Walker, appeals the Bond County circuit court's orders denying him pretrial release under section 110-6.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1 (West 2024)), as amended by Public Act 101-652 (eff. Jan. 1 2023), commonly known as the Pretrial Fairness Act (Act). See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of the Act); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). Defendant also appeals the court's denial of his motion for relief and immediate release pursuant to Illinois Supreme Court Rule 604(h)(2) (eff. Apr. 15, 2024). For the following reasons, we affirm.

1

¶ 3                                    I. Background

¶ 4     On October 30, 2024, the State charged defendant by information with one count of theft over $500 (720 ILCS 5/16-1(a)(4) (West 2024)), a Class 3 felony; one count of methamphetamine possession (720 ILCS 646/60(a) (West 2024)), a Class 3 felony; and one count of possession of burglary tools (720 ILCS 5/19-2(a) (West 2024)), a Class 4 felony. The State later filed an amended information charging defendant with the same offenses.

¶ 5     Also on October 30, 2024, the State filed a verified petition to deny defendant pretrial release, alleging that defendant had a high likelihood of willful flight to avoid prosecution and that he was charged with a felony offense other than a Class 4 offense. The circuit court held a hearing the same date.

¶ 6     At the hearing, the State proffered that the Bond County Sheriff's Department "received a report from Ron Whiteside who called and stated he observed a trailer that he owned being pulled by the suspect vehicle and he had not given permission for this individual to take this trailer." Shortly thereafter, law enforcement learned that "the trailer had actually come off of the suspect's car and the suspect continued to flee away from deputies at that time." Law enforcement discovered the suspect vehicle, a dark red Ford Explorer, sitting unoccupied in a wooded area. Law enforcement learned that the suspect vehicle was registered to defendant. Trail cameras in the wooded area revealed a white male, who law enforcement identified as defendant due to defendant's extensive criminal history. Law enforcement conducted a thorough search of the wooded area, which included an Illinois State Police air unit and a K9 unit. The K9 unit located a bag containing suspected methamphetamine. The K9 unit then alerted on a nearby tree where defendant was found hiding. Defendant was then taken into custody.

¶ 7    The State further proffered that an inventory search of the Ford Explorer yielded multiple screwdrivers, wire cutters, and a pair of red bolt cutters. The bolt cutters had fresh paint on the edge of the cutters, which matched the color of the paint on the trailer. The trailer was valued at well over $500.

¶ 8    The State argued that defendant had a high likelihood of willful flight, which the State defined as "intentional conduct with a purpose to thwart the judicial process to avoid prosecution." The State further argued that "[r]ecurrence and patterns of intentional conduct to evade may be considered as factors in assessing a future attempt to evade prosecution." The State asserted that defendant displayed patterns of intentional conduct to evade prosecution, noting that defendant was on parole for cases in both Bond and Madison Counties. The State further noted, "And in that case he did, in fact, run from police. He has failed to appear in this court previously and a warrant has been issued for him." The State also stated as follows:

> "And then I think most importantly in 14-CF-28, he was actually charged with escaping from the Bond County jail and he is also a suspect in numerous burglary cases in Madison County as well. It's very clear from his history of running from the police, not only in those prior cases but also in this case itself, he was hiding in a tree, Your Honor. They had to get K9 officers, multiple agencies involved as well as an air unit to try to locate him. It's very, very clear that he has a recurrence and patterns of intentional conduct and the People do believe that given his history, and the history in this current case as well, he has a high likelihood of willful flight. Therefore, the People believe that there is not a least restrictive means at this time and are asking that he be detained."

The State also noted that defendant's Virginia Pretrial Assessment Instrument (VPRAI) score was "9 out of 14."

3

¶ 9    Defense counsel disagreed with the State's assertion that defendant was a flight risk. Defense counsel argued that defendant was a lifelong resident of the Madison County area and that he had extensive family in the area. Defense counsel noted that defendant resided with a man, who was also his employer, in Highland, Illinois. Defendant paid rent and performed 20 to 25 hours of concrete work, drywall, and framing each week. Defendant also reported that he worked for another man in Livingston, Illinois, where he worked approximately 18 to 20 hours each week. Defense counsel further noted that defendant had two children and that he paid child support for both of his children. Defense counsel also pointed out that defendant's "escape charge" was 10 years old and that defendant successfully completed house arrest while on parole without incident. Defense counsel claimed that defendant was not a flight risk and that "if he were placed on conditions, perhaps, with an ankle monitor to ascertain his whereabouts at all times that any flight risk could be eliminated pretty much." Defense counsel also argued that defendant did not have "a lot of failures to appear."

¶ 10    After considering the arguments, the circuit court found that the proof was evident or the presumption great that defendant committed a detainable offense. The court also found that defendant had a high likelihood of willful flight and, thus, ordered defendant detained. The court entered a written order detailing the reasons for ordering defendant detained on October 30, 2024.

¶ 11    At a pretrial hearing held on December 5, 2024, the circuit court reviewed defendant's continued detention. The State stood on its prior proffer and argument. Defense counsel asserted that defendant could return to his prior residence with his employer and that defendant made plans to attend Chestnut Rehabilitation Facility in Maryville, Illinois, within 10 days if permitted. Defendant's mother offered to provide defendant with transportation to and from court. Defense counsel argued that "an ankle monitor would be appropriate and, perhaps, weekly reporting to

4

pretrial services would be a requirement as well." Defense counsel alternatively asked that the court consider releasing defendant to the Chestnut Rehabilitation Facility. Defense counsel further noted that defendant's parole officer "was onboard for [defendant] actually going to a rehab facility." The circuit court inquired whether defendant was suffering from mental illness or using drugs, and defense counsel responded in the negative. After considering the arguments, the court found that continued detention was necessary.

¶ 12 On December 9, 2024, the circuit court entered an order remanding defendant to Madison County custody. The record on appeal does not include a transcript from the hearing held on December 9, 2024. It appears that defendant was released from custody in Madison County six days before his next scheduled hearing in Bond County.

¶ 13 At a pretrial hearing held on December 16, 2024, the circuit court noted that defendant appeared in street clothes due to his mistaken release from custody in Madison County. The court explained that the Madison County circuit court had released defendant on conditions for separate charges but that the Bond County circuit court never modified its previously entered detention order. The court stated, "Two charges in two counties and pretrial release would be an issue for both of the courts so being released on one didn't change my order of detention." The court further stated, "What should have happened was they should have held you for Bond County to come and take you back into custody. So you have by my order continued to be detained. Their releasing you to the street was a mistake."

¶ 14 Defense counsel argued that during defendant's mistaken release, which occurred at no fault of defendant, he obtained gainful employment and again resided with his employer. Defense counsel noted that defendant had no issues during his release. Defense counsel further noted that

5

defendant's parole officer conducted a home visit during defendant's release, and the parole officer was "onboard for [defendant] obtaining some kind of drug rehabilitation as well."

¶ 15    After considering the arguments, the circuit court addressed defendant's risk of willful flight. The court found it relevant to consider the fact that defendant appeared at the hearing on his own volition. The court continued as follows:

> "But the past record is of such egregious and a concerning level, your VPRAI score is high. You have actual convictions for actual escape from the county jail building and there are convictions for fleeing and attempting to elude, high speed chases in automobiles and similar types of—types of conduct alleged in the incident report where you fled when observed with stolen property and concealed yourself, parking the vehicle in a wooded area and then fleeing from there and hiding in a tree."

When the court further stated that defendant's "past history demonstrate[d] that [he] would flee and hide and try to avoid—", defendant interjected. Defendant claimed his continued detention was "not fair." The court ultimately found that continued detention was necessary.

¶ 16    On January 10, 2025, defendant filed a motion for relief pursuant to Illinois Supreme Court Rule 604(h)(2) (eff. Apr. 15, 2024). Defendant argued in the motion that (1) the circuit court erred by finding that his continued detention was necessary, (2) the State failed to meet its burden to prove that his release from custody would pose a risk of willful flight, and (3) the court should have ordered defendant placed on an ankle monitor as a less restrictive condition of release. Defendant subsequently filed a brief in support of his motion for relief on January 27, 2025.

¶ 17    On February 6, 2025, the circuit court denied defendant's motion for relief. Defendant appeals the orders entered by the court on October 30, 2024, December 9, 2024, December 16, 2024, and February 6, 2025.

6

¶ 18                                    II. Analysis

¶ 19    On appeal, the Office of the State Appellate Defender (OSAD) was appointed to represent defendant. OSAD filed a memorandum in support of defendant's appeal. OSAD argues in the memorandum that this court should reverse the circuit court's finding that defendant posed a risk of willful flight where defendant's conduct following his mistaken release demonstrated he was not a flight risk. Alternatively, OSAD argues that this court should find that conditions, including electronic monitoring, could mitigate any risk of willful flight.

¶ 20    Pretrial release—including the conditions related thereto—is governed by the Act. A defendant's pretrial release may be denied only in certain statutorily limited situations. 725 ILCS 5/110-6.1 (West 2024).

¶ 21    Relevant here, the circuit court may deny a defendant pretrial release only if "the person has a high likelihood of willful flight to avoid prosecution and is charged with" "[a] felony offense other than a Class 4 offense." *Id.* § 110-6.1(a)(8)(B). In order to deny a defendant pretrial release on the basis that the defendant poses a risk of willful flight from prosecution, the State must prove, by clear and convincing evidence, that (1) the proof is evident or the presumption great that the defendant committed a detainable offense; (2) the defendant "has a high likelihood of willful flight to avoid prosecution," if released; and (3) no condition or combination of conditions can mitigate the defendant's risk of willful flight. *Id.* § 110-6.1(a)(8)(B), (e)(1), (3).

¶ 22    The Code defines "willful" flight as follows:

"intentional conduct with a purpose to thwart the judicial process to avoid prosecution. Isolated instances of nonappearance in court alone are not evidence of the risk of willful flight. Reoccurrence and patterns of intentional conduct to evade prosecution, along with

7

any affirmative steps to communicate or remedy any such missed court date, may be considered as factors in assessing future intent to evade prosecution." *Id.* § 110-1(f).

¶ 23 The circuit court must "make a written finding summarizing [its] reasons for concluding that the defendant should be denied pretrial release, including why less restrictive conditions would not *** prevent the defendant's willful flight from prosecution." *Id.* § 110-6.1(h)(1). "At each subsequent appearance of the defendant before the court, the judge must find that continued detention is necessary *** to prevent the defendant's willful flight from prosecution." *Id.* § 110-6.1(i-5).

¶ 24 Where, as here, the parties proceeded solely by proffer or submission of documentary evidence at a pretrial detention hearing, this court may conduct its own independent review of the proffered evidence and, thus, our review is *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 54; *Addison Insurance Co. v. Fay*, 232 Ill. 2d 446, 453 (2009).

¶ 25 After conducting our own independent review of the proffered evidence in the present case, we cannot say the circuit court erred by finding that defendant posed a high risk of willful flight to avoid prosecution. The proffered evidence demonstrated that defendant failed to appear for a scheduled court date in 2006. The proffered evidence further demonstrated that in 2014 defendant escaped from jail to avoid prosecution and, while a fugitive, fled officers in a high-speed chase. Although defendant's escape occurred in 2014, we note that defendant was not released from prison for the offenses relating to his escape until 2022. While he was on parole for those offenses in 2022, defendant was again arrested and charged with, *inter alia*, fleeing and attempting to elude an officer in Madison County. We find it appropriate to consider defendant's prior escape conviction, given his incarceration and more recent fleeing and eluding charge. Thus, considering

defendant's history as a whole, we conclude that defendant has demonstrated a prior pattern of willful flight to avoid prosecution.

¶ 26    Moreover, defendant's actions in the present case demonstrate a continued pattern of willful flight to avoid prosecution. Notably, defendant, after committing theft, fled from police and attempted to hide in a wooded area. Defendant even climbed a tree to avoid arrest. Law enforcement was required to deploy both an air unit and K9 unit in order to detain defendant. In our view, this proffered evidence demonstrated a recurring pattern of willful flight to avoid prosecution.

¶ 27    We also agree with the circuit court's determination that no conditions could mitigate the threat of defendant's willful flight. While defendant maintains that electronic monitoring could mitigate the threat, we note that defendant previously escaped from jail. This demonstrates that electronic home monitoring—a much less restrictive option than confinement in jail—would not suffice to mitigate the threat of willful flight. Thus, we hold that the circuit court did not err by ordering defendant detained.

¶ 28    In so holding, we reject defendant's argument that his good conduct following his mistaken release for six days demonstrated that he did not pose a willful-flight risk. As an initial matter, we note that defendant waived review of this specific argument by failing to include it in his motion for relief. See Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024) ("Upon appeal, any issue not raised in the motion for relief, other than errors occurring for the first time at the hearing on the motion for relief, shall be deemed waived."). Here, the circuit court ordered defendant's continued detention on December 16, 2024, after defendant was mistakenly released from custody in Madison County. In doing so, the court rejected defense counsel's argument that defendant's conduct while released demonstrated he was not a flight risk. Despite this, defense counsel failed to include this specific

9

argument in defendant's motion for relief filed on January 10, 2025. Accordingly, although the State does not raise the issue of defendant's waiver its brief to this court, we conclude that defendant waived review of this issue on appeal.

¶ 29   Waiver aside, we find defendant's argument meritless. In support of this argument, defendant cites *People v. Crawford*, 2024 IL App (3d) 230668. In *Crawford*, the defendant allegedly stalked the victim in February and March of 2023, but the State did not file charges against the defendant for the alleged stalking until October 2023—more than seven months later. *Id.* ¶ 10. In the interim, the victim obtained an order of protection against the defendant, and the defendant did not violate the order of protection. *Id.* The evidence demonstrated that the defendant had since moved, obtained a new paramour, and was expecting a baby. *Id.* In applying the "dangerousness" standard applicable to stalking or aggravated stalking (725 ILCS 5/110-6.1(a)(2) (West 2022)), the Third District noted that the circuit court could only consider whether the defendant posed a threat to the safety of the victim of the alleged offense in determining whether pretrial detention was appropriate. *Id.* ¶ 9. The Third District concluded that there was no indication that the defendant continued to pose a threat to the victim. *Id.* ¶ 10. The Third District went on to note that if the State had "pursued charges against [the] defendant earlier, the result may have been different." *Id.* Accordingly, the Third District reversed the circuit court's detention order and remanded for the court to determine which conditions to impose on defendant's release. *Id.* ¶¶ 10, 11.

¶ 30   We find defendant's reliance on *Crawford* misplaced. We note that *Crawford* involved the circuit court's determination of whether the defendant posed a threat to the safety of the victim of an alleged stalking offense. *Id.* ¶ 9. Whereas, here, the circuit court was required to make a determination as to whether defendant posed a high likelihood of willful flight to avoid

10

prosecution. Moreover, in *Crawford*, the Third District considered the defendant's conduct over the course of seven months before the State brought charges against him. In contrast, here, defendant sought release based on his alleged good conduct while he was mistakenly released for six days—a considerably shorter time period. Given these differences, we do not find the reasoning of *Crawford* persuasive in the instant case. Thus, even if defendant had not waived review of this issue, we would reject his argument on the merits.

¶ 31　　In addition, we reject defendant's argument that his prior acts of evading arrest and failing to appear did not support a finding that he posed a risk of willful flight. We find defendant's reliance on *People v. Sims*, 2024 IL App (4th) 231335-U, and *People v. Martinez*, 2024 IL App (3d) 240232-U, misplaced. In *Sims*, the Fourth District, relying on the First District's decision in *People v. Quintero*, 2024 IL App (1st) 232129-U, noted that an act of evading arrest may be viewed as generally obstructing the criminal justice system, but that such act did not reflect a thwarting of the judicial process as required to show a willful avoidance of prosecution. *Sims*, 2024 IL App (4th) 231335-U, ¶ 28. Similarly, in *Martinez*, the Third District concluded that the defendant's charges, and prior convictions for, aggravated fleeing and eluding were not enough to demonstrate that he posed a risk of willful flight where the defendant had never failed to appear in court. 2024 IL App (3d) 240232-U, ¶ 19.

¶ 32　　Here, unlike *Sims*, *Quintero*, and *Martinez*, defendant had a prior conviction for escaping from jail—an act that could only serve to avoid prosecution. We conclude that the circuit court could properly consider defendant's escape from jail in conjunction with defendant's prior acts of failing to appear and evading police. To the extent *Sims* and *Quintero* hold that a circuit court may not consider a defendant's act of evading police or arrest in evaluating the defendant's risk of willful flight, we disagree with the reasoning of those cases. Our reading of the statute does not

11

include a prohibition against the circuit court's consideration of the circumstances of past and present offenses which tend to demonstrate a likelihood of willful flight. Thus, we do not find defendant's cited cases persuasive.

¶ 33     In sum, we conclude that the State's proffered evidence was sufficient to prove, by clear and convincing evidence, that defendant posed a high risk of willful flight to avoid prosecution. The evidence further demonstrated that no conditions could mitigate this risk. Therefore, we hold that the circuit court did not err by ordering defendant detained.

¶ 34                                    III. Conclusion

¶ 35     For the reasons stated, we affirm the Bond County circuit court's orders denying defendant pretrial release and denying defendant's motion for relief.

¶ 36     Affirmed.